# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### (Fort Lauderdale Division)

| | | |
|---|---|---|
| RONALD E. VERNON, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHERYL A. VERNON, | ) | |
| | ) | |
| Plaintiffs, | ) | **Case No.** _____ |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL A. STABACH | ) | |
| 1339 St. Tropez Circle | ) | |
| Suite 308 | ) | |
| Westin, Florida 33326 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| EQUITY TRUST COMPANY | ) | |
| Serve: Richard Desich, Registered Agent | ) | |
| 225 Burns Road | ) | |
| Elyria, Ohio 44035 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STERLING ASSET MANAGEMENT CO. | ) | |
| d/b/a STERLING TRUST COMPANY | ) | |
| Serve: John Burns, Registered Agent | ) | |
| 3550 Lander Road | ) | |
| Pepper Pike, Ohio 44124 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOES 1-6 | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

COME NOW Ronald E. Vernon ("Mr. Vernon") and Cheryl A. Vernon ("Ms. Vernon") (Mr. Vernon and Ms. Vernon being collectively known as the "Plaintiffs," and each sometimes being known as a "Plaintiff") and as and for their complaint (the "Complaint") against Michael A. Stabach ("Mr. Stabach"), Equity Trust Company ("Equity"), Sterling Asset Management Co. d/b/a Sterling Trust Company ("Sterling"), and John Does 1-6 (each individually being known as "John Doe" and collectively being known as "John Does") (Mr. Stabach, Equity, Sterling and John Does being collectively known as the "Defendants," and each sometimes being known as a "Defendant") state as follows:

## The Parties

1. Mr. Vernon is a natural person who, at all times relevant, has been a citizen of the Commonwealth of Virginia.

2. Ms. Vernon is a natural person who, at all times relevant, has been a citizen of the Commonwealth of Virginia.

3. Mr. Stabach is a natural person who, upon information and belief, has been a citizen of the State of Florida since 2009, and who, upon information and belief, is currently residing in Broward County, Florida.

4. Equity is a South Dakota corporation doing business as Equity Institutional, claiming to be successor to Sterling.

5. Sterling is a Delaware corporation that, on or about April 13, 1995, filed paperwork with the Secretary of State of Ohio to use the trade name "Sterling Trust Company."

6. John Does 1-6 are the persons, whether natural or legal, who have come into possession of the lost retirement assets referenced in this Complaint, since the time of their loss through the present.

**Jurisdiction and Venue**

7. This Honorable Court enjoys original jurisdiction over the instant matter, pursuant to Section 1331 of Title 28 of the United States Code, because this suit seeks relief pursuant to, *inter alia*, Section 10b-5 of Part 240 of Section 17 of the Code of Federal Regulations.

8. This Honorable Court also enjoys original jurisdiction over the claims of Mr. Vernon pursuant to Section 1332(a)(1) of Title 28 of the United States Code, inasmuch as the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00) and this suit is between citizens of different states.

9. This Honorable Court also enjoys supplemental jurisdiction over the claims of Ms. Vernon pursuant to Section 1367 of Title 28 of the United States Code, inasmuch as her claims are so related to those of Mr. Vernon that they form part of this case.

10. Venue is proper in the Southern District of Florida pursuant to Section 1391(b)(3) of Title 28 of the United States Code because Mr. Stabach is a citizen of Broward County, Florida.

**Background**

11. On or about July 12, 2007, Mr. Vernon transferred his individual retirement account ("Mr. Vernon's IRA") to Sterling.

12. At the time of the transfer, Mr. Vernon designated Mr. Stabach, then affiliated with Michael Victor Gold + Silver Traders as his representative, conferring upon Mr. Stabach the power to give investment direction to Sterling on his behalf.

13. Sterling holds itself out as a manager and custodian of various retirement accounts, specializing in, *inter alia*, the management and custody of precious metals.

14. Mr. Stabach holds himself out as "A fully licensed and bonded discount gold coin

3

dealer," with "State of Florida Commercial Seller Registration No. TC3520," and was, as of 2009, operating a Florida-based entity known as "National Discount Coins" that claims membership in the American Numismatic Society.

15. The Florida Department of State Division of Corporations has no records of any entity known as "National Discount Coins."

16. The American Numismatic Society does not list Mr. Stabach or National Discount Coins amongst its membership rolls.

17. The Florida Department of Business & Professional Regulation has no records of any license bearing the number TC3520.

18. Following the transfer of Mr. Vernon's IRA, Ms. Vernon transferred her individual retirement account ("Ms. Vernon's IRA") and her ROTH IRA ("Ms. Vernon's ROTH IRA") to Sterling, also conferring upon Mr. Stabach the power to give investment direction to Sterling on her behalf.

19. As of June 30, 2012, Sterling reported Mr. Vernon's IRA to have a balance of One Hundred Four Thousand One Hundred Forty Dollars and Eighty Cents ($104,140.80).

20. As of June 30, 2012, Sterling reported Ms. Vernon's IRA to have a balance of Thirty Four Thousand Seven Hundred Thirteen Dollars and Sixty Cents ($34,713.60).

21. As of June 30, 2012, Sterling reported Ms. Vernon's ROTH IRA to have a balance of Thirteen Thousand Thirty Five Dollars and Ten Cents ($13,035.10).

**Trading of Metals and Disappearance of Funds**

22. Mr. Stabach would regularly send Mr. Vernon and Ms. Vernon invoices, on the letterhead of National Discount Coins, indicating the purchase or sale of precious metals for their respective accounts.

23. On August 1, 2012, Mr. Stabach sent Ms. Vernon an invoice indicating the purchase of Twelve Thousand Five Hundred Ten Dollars and No Cents ($12,510.00) of precious metals for Ms. Vernon's ROTH IRA, with the funds to be paid out of Ms. Vernon's ROTH IRA and the precious metals to be delivered to an account held by Sterling at the "Delaware Depository" (the "Ms. Vernon ROTH Transfer").

24. The Ms. Vernon ROTH Transfer was labeled as a "Metal to Metal Transfer," meaning that metals previously owned by Ms. Vernon would be exchanged for those indicated on the corresponding invoice, and Sterling could facilitate the Ms. Vernon ROTH Transfer by sampling shifting metals at the "Delaware Depository."

25. On August 1, 2012, Mr. Stabach sent Ms. Vernon an invoice indicating the purchase of Thirty Three Thousand Three Hundred Sixty Dollars and No Cents ($33,360.00) of precious metals for Ms. Vernon's IRA, with the funds to be paid out of Ms. Vernon's IRA and the precious metals to be delivered to an account held by Sterling at the "Delaware Depository" (the "Ms. Vernon IRA Transfer").

26. The Ms. Vernon IRA Transfer was labeled as a "Metal to Metal Transfer," meaning that metals previously owned by Ms. Vernon would be exchanged for those indicated on the corresponding invoice, and Sterling could facilitate the Ms. Vernon IRA Transfer by sampling shifting metals at the "Delaware Depository."

27. On August 1, 2012, Mr. Stabach sent Mr. Vernon an invoice indicating the purchase of One Hundred Thousand Eighty Dollars and No Cents ($100,080.00) of precious metals for Mr. Vernon's IRA, with the funds to be paid out of Mr. Vernon's IRA and the precious metals to be delivered to an account held by Sterling at the "Delaware Depository" (the "Mr. Vernon IRA Transfer").

28. The Mr. Vernon IRA Transfer was labeled as a "Metal to Metal Transfer," meaning that metals previously owned by Mr. Vernon would be exchanged for those indicated on the corresponding invoice, and Sterling could facilitate the Mr. Vernon IRA Transfer by sampling shifting metals at the "Delaware Depository."

29. Upon information and belief, Sterling has an agreement with the Delaware Depository Storage Company allowing for Sterling to utilize the same for the storage of precious metals.

30. At all times since August 1, 2012, Sterling has reported Ms. Vernon's IRA to have a balance of Zero Dollars and Zero Cents ($0.00).

31. At all times since August 1, 2012, Sterling has reported Ms. Vernon's ROTH IRA to have a balance of Zero Dollars and Zero Cents ($0.00).

32. At all times since August 1, 2012, Sterling has reported Mr. Vernon's IRA to have a balance of Zero Dollars and Zero Cents ($0.00).

33. On March 16, 2013, Mr. Vernon wrote to Mr. Stabach, on behalf of himself and Ms. Vernon, "Hi Mike, I sent you an email about 2 weeks ago and have not heard anything from you about our 3 IRA accounts. Back in November, you told me that you would look into where the 3 deposits for our IRA's went, but I have not gotten a good answer. Sincerely, Ron." ("The March 16, 2013 E-mail").

34. Mr. Stabach responded to the March 16, 2013 E-mail, "I'm sorry about that. I've been traveling so much for work that I miss a lot of emails because International cell phone roaming is a huge expense down here. The person that was working for me in Florida quit a while ago and I have neglected nat coins for several months. As soon as I track this guy down 1 will let you know what is happening however as previously mentioned if I have to replace your

inventory personally I will do so. Thanks for your patience. –Mike." (The "Stabach Response").

35. Mr. Stabach has not communicated with Mr. Vernon since sending the Stabach Response, and has not otherwise undertaken any actions to account for, replace, or otherwise address the funds that have gone missing from Mr. Vernon's IRA, Ms. Vernon's IRA, and Ms. Vernon's ROTH IRA.

### Count I – Violation of Section 10b-5 of Part 240 of Title 17 of the Code of Federal Regulations (Defendants Sterling and Equity)

36. The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

37. Sterling failed to inform Mr. Vernon and Ms. Vernon that funds were being diverted from their respective retirement accounts, and not reinvested in the manner suggested on applicable invoices, on or about August 1, 2012.

38. Sterling made this material omission with scienter, knowing an invoice suggesting the exchange of metals in a warehouse over which it had custody, for other metals in the same warehouse over which it had custody, to be false and fraudulent in all respects.

39. The Plaintiffs detrimentally relied upon Sterling's omission, not taking any actions to immediately seize their retirement funds before their disappearance, and otherwise not seeking to enjoin the subject transfers of money.

40. Sterling's omission was the proximate cause of the losses suffered by Mr. Vernon and Ms. Vernon, as but for the aforementioned detrimental reliance, such losses would not have been incurred.

WHEREFORE, Mr. Vernon and Ms. Vernon respectfully pray this Honorable Court enter judgment against Sterling, and Equity, jointly and severally, and in favor of Mr. Vernon, in the

amount of One Hundred Four Thousand One Hundred Forty Dollars and Eighty Cents ($104,140.80); that this Honorable Court enter judgment against Sterling, and Equity, jointly and severally, and in favor of Ms. Vernon, in the amount of Forty Seven Thousand Seven Hundred Forty Eight Dollars and Seventy Cents ($47,748.70); and for such other and further relief as may be just and proper.

**Count II – Violation of Section 10b-5 of
Part 240 of Title 17 of the Code of Federal Regulations
(Defendant Stabach)**

41. The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

42. Mr. Stabach falsely informed Mr. Vernon and Ms. Vernon that the precious metals held in their respective retirement accounts and physically stored in the "Delaware Depository" were being exchanged for other precious metals, also physically stored in the "Delaware Depository," on or about August 1, 2013.

43. Mr. Stabach made this false statement with scienter, knowing the metals held in Mr. Vernon and Ms. Vernon's respective accounts were, in fact, being converted for the benefit of a party other than Mr. Vernon and Ms. Vernon, and knowing that the indicated transfer would not genuinely occur.

44. The Plaintiffs detrimentally relied upon Mr. Stabach's representation, not taking any actions to immediately seize their retirement funds before their disappearance, and otherwise not seeking to enjoin the subject transfers of money.

45. Mr. Stabach's representation was the proximate cause of the losses suffered by Mr. Vernon and Ms. Vernon, as but for the aforementioned detrimental reliance, such losses would not have been incurred.

WHEREFORE, Mr. Vernon and Ms. Vernon respectfully pray this Honorable Court enter judgment against Mr. Stabach, and in favor of Mr. Vernon, in the amount of One Hundred Four Thousand One Hundred Forty Dollars and Eighty Cents ($104,140.80); that this Honorable Court enter judgment against Mr. Stabach, and in favor of Ms. Vernon, in the amount of Forty Seven Thousand Seven Hundred Forty Eight Dollars and Seventy Cents ($47,748.70); and for such other and further relief as may be just and proper.

### Count III – Negligence
### (Defendants Sterling, Equity and Stabach)

46. The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

47. Mr. Stabach and Sterling each owed the Plaintiffs a duty to ensure their retirement account assets were held in a secure manner.

48. Mr. Stabach and Sterling each breached their respective duty to the Plaintiffs when they allowed the entirety of the Plaintiffs' retirement account assets to be misplaced.

49. The breach of this duty proximately and actually caused the Plaintiffs to lose the entirety of their respective retirement accounts.

50. Mr. Vernon and Ms. Vernon have been materially damaged through the complete loss of each of the Plaintiffs' retirement accounts.

WHEREFORE, Mr. Vernon and Ms. Vernon respectfully pray this Honorable Court enter judgment against Mr. Stabach, Sterling, and Equity, jointly and severally, and in favor of Mr. Vernon, in the amount of One Hundred Four Thousand One Hundred Forty Dollars and Eighty Cents ($104,140.80); that this Honorable Court enter judgment against Mr. Stabach, Sterling, and Equity, jointly and severally, and in favor of Ms. Vernon, in the amount of Forty Seven Thousand Seven Hundred Forty Eight Dollars and Seventy Cents ($47,748.70); and for such

other and further relief as may be just and proper.

### Count IV – Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Defendant Stabach)

51. The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

52. Mr. Stabach sent the Plaintiffs invoices indicating that the Mr. Vernon IRA Transfer, Ms. Vernon IRA Transfer, and Ms. Vernon ROTH Transfer were all genuine transfers of precious metals for other precious metals.

53. Mr. Stabach sending these invoices constitutes a deceptive act as it served to propagate a demonstrably untrue assertion and did so in a manner that was likely to deceive the Plaintiffs.

54. This deceptive act caused the Plaintiffs to incur actual damages, as it resulted in the Plaintiffs not taking any actions to immediately seize their retirement funds before their disappearance, and otherwise not seeking to enjoin the subject transfers of money.

55. Mr. Vernon and Ms. Vernon have been materially injured through the complete loss of each of the Plaintiffs' retirement accounts, incurring actual damages equal to the gross sum of their respective accounts prior to the complete loss of each such account.

WHEREFORE, Mr. Vernon and Ms. Vernon respectfully pray this Honorable Court enter judgment against Mr. Stabach, and in favor of Mr. Vernon, in the amount of One Hundred Four Thousand One Hundred Forty Dollars and Eighty Cents ($104,140.80); that this Honorable Court enter judgment against Mr. Stabach, and in favor of Ms. Vernon, in the amount of Forty Seven Thousand Seven Hundred Forty Eight Dollars and Seventy Cents ($47,748.70); and for such other and further relief as may be just and proper.

**Count V – Breach of Fiduciary Duty**
**(Defendants Sterling, Equity and Stabach)**

56.     The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

57.     Mr. Stabach owed the Plaintiffs a fiduciary duty in his capacity as their investment representative.

58.     Sterling owed the Plaintiffs a fiduciary duty as the custodian of their retirement assets.

59.     Mr. Stabach breached his fiduciary duty to the Plaintiffs by undertaking a transaction wherein the entirety of their retirement assets were lost.

60.     Sterling breached its fiduciary duty to the Plaintiffs by mishandling the transfer of their retirement assets such that they were left with no precious metals in a so-called "Metal for Metal Transfer."

61.     These breaches of fiduciary duty were the actual and proximate cause of the Plaintiffs losing the entirety of their respective retirement accounts.

WHEREFORE, Mr. Vernon and Ms. Vernon respectfully pray this Honorable Court enter judgment against Mr. Stabach, Sterling, and Equity, jointly and severally, and in favor of Mr. Vernon, in the amount of One Hundred Four Thousand One Hundred Forty Dollars and Eighty Cents ($104,140.80); that this Honorable Court enter judgment against Mr. Stabach, Sterling, and Equity, jointly and severally, and in favor of Ms. Vernon, in the amount of Forty Seven Thousand Seven Hundred Forty Eight Dollars and Seventy Cents ($47,748.70); and for such other and further relief as may be just and proper.

**Count VI – Negligent Misrepresentation**
**(Defendants Sterling, Equity and Stabach)**

62.     The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

63.     Mr. Stabach and Sterling implicitly represented to the Plaintiffs that their respective retirement funds would be secure in the custody of Sterling and under the management of Mr. Stabach, subject only to those risks associated with market volatility.

64.     This representation was material in all respects as it spoke to the very core of the services being offered by Mr. Stabach and Sterling.

65.     Mr. Stabach and Sterling either knew, or should have known, of the falsity of this representation, as Sterling has, on more than one occasion, been sued by former clients whose funds disappeared in a manner similar to that in which Mr. Vernon and Ms. Vernon's funds disappeared.

66.     Mr. Stabach also represented to the Plaintiffs that the Mr. Vernon IRA Transfer, Ms. Vernon IRA Transfer, and Ms. Vernon ROTH Transfer were all genuine transfers of precious metals for other precious metals.

67.     Mr. Stabach either knew, or should have known, of the falsity of this representation, in his capacity as the Plaintiffs' investment manager.

68.     As evidenced by the complete disappearance of all funds in Mr. Vernon's IRA, Ms. Vernon's IRA, and Ms. Vernon's ROTH IRA, the Plaintiffs' respective retirement funds were not secure in the custody of Sterling and under the management of Mr. Stabach.

69.     As evidenced by the complete disappearance of all funds in Mr. Vernon's IRA, Ms. Vernon's IRA, and Ms. Vernon's ROTH IRA, the Mr. Vernon IRA Transfer, Ms. Vernon IRA Transfer, and Ms. Vernon ROTH Transfer were not all genuine transfers of precious metals

for other precious metals.

70.     The Plaintiffs detrimentally relied upon these representations, as they would not have placed their retirement funds in the custody of Sterling and under the management of Mr. Stabach had they believed the funds would not be secure, subject only to those risks associated with market volatility.

71.     The Plaintiffs additionally detrimentally relied upon Mr. Stabach's representation, not taking any actions to immediately seize their retirement funds before their disappearance, and otherwise not seeking to enjoin the subject transfers of money.

72.     Mr. Stabach made these representations with the clear intent that Mr. Vernon and Ms. Vernon would rely upon the same, as he did so in an effort to gain – and retain – the business of Mr. Vernon and Ms. Vernon and, in so doing, so promote his own business as an investment manager.

73.     Sterling made these representations with the clear intent to Mr. Vernon and Ms. Vernon would rely upon the same, as it did so in an effort to gain – and retain – the business of Mr. Vernon and Ms. Vernon, for its own pecuniary benefit.

74.     Mr. Vernon and Ms. Vernon have been materially injured through the complete loss of each of the Plaintiffs' retirement accounts.

WHEREFORE, Mr. Vernon and Ms. Vernon respectfully pray this Honorable Court enter judgment against Mr. Stabach, Sterling, and Equity, jointly and severally, and in favor of Mr. Vernon, in the amount of One Hundred Four Thousand One Hundred Forty Dollars and Eighty Cents ($104,140.80); that this Honorable Court enter judgment against Mr. Stabach, Sterling, and Equity, jointly and severally, and in favor of Ms. Vernon, in the amount of Forty Seven Thousand Seven Hundred Forty Eight Dollars and Seventy Cents ($47,748.70); and for such

other and further relief as may be just and proper.

### Count VI – Conversion
### (Defendant John Doe 1)

75. The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

76. John Doe 1 currently possesses the precious metals that were in Mr. Vernon's IRA prior to the Mr. Vernon IRA Transfer.

77. No consideration whatsoever having been afforded Mr. Vernon for the precious metals that were in Mr. Vernon's IRA prior to the Mr. Vernon IRA Transfer, John Doe 1's current exercise of ownership over those precious metals is inconsistent with Mr. Vernon's right of possession of those precious metals.

78. It would be futile for Mr. Vernon to demand the return of the subject precious metals because he does not presently know the true identity of John Doe 1, and because the nature of the conversion suggests the motivations and gains of John Doe 1 to be sufficiently illicit in nature as to not be likely dissuaded through the making of a demand.

WHEREFORE, Mr. Vernon respectfully prays this Honorable Court enter an order directing John Doe 1 to return the subject precious metals to Mr. Vernon; alternatively, that this Honorable Court enter judgment against John Doe 1, and in favor of Mr. Vernon, in the amount of One Hundred Four Thousand One Hundred Forty Dollars and Eighty Cents ($104,140.80); and for such other and further relief as may be just and proper.

### Count VII – Conversion
### (Defendant John Doe 2)

79. The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

80. John Doe 2 currently possesses the precious metals that were in Ms. Vernon's IRA prior to the Ms. Vernon IRA Transfer.

81. No consideration whatsoever having been afforded Ms. Vernon for the precious metals that were in Ms. Vernon's IRA prior to the Ms. Vernon IRA Transfer, John Doe 2's current exercise of ownership over those precious metals is inconsistent with Ms. Vernon's right of possession of those precious metals.

82. It would be futile for Ms. Vernon to demand the return of the subject precious metals because she does not presently know the true identity of John Doe 2, and because the nature of the conversion suggests the motivations and gains of John Doe 2 to be sufficiently illicit in nature as to not be likely dissuaded through the making of a demand.

WHEREFORE, Ms. Vernon respectfully prays this Honorable Court enter an order directing John Doe 2 to return the subject precious metals to Ms. Vernon; alternatively, that this Honorable Court enter judgment against John Doe 2, and in favor of Ms. Vernon, in the amount of Thirty Four Thousand Seven Hundred Thirteen Dollars and Sixty Cents ($34,713.60); and for such other and further relief as may be just and proper.

### Count VIII – Conversion
### (Defendant John Doe 3)

83. The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

84. John Doe 3 currently possesses the precious metals that were in Ms. Vernon's ROTH IRA prior to the Ms. Vernon ROTH Transfer.

85. No consideration whatsoever having been afforded Ms. Vernon for the precious metals that were in Ms. Vernon's IRA prior to the Ms. Vernon ROTH Transfer, John Doe 3's current exercise of ownership over those precious metals is inconsistent with Ms. Vernon's right

of possession of those precious metals.

86.    It would be futile for Ms. Vernon to demand the return of the subject precious metals because she does not presently know the true identity of John Doe 3, and because the nature of the conversion suggests the motivations and gains of John Doe 3 to be sufficiently illicit in nature as to not be likely dissuaded through the making of a demand.

WHEREFORE, Ms. Vernon respectfully prays this Honorable Court enter an order directing John Doe 3 to return the subject precious metals to Ms. Vernon; alternatively, that this Honorable Court enter judgment against John Doe 3, and in favor of Ms. Vernon, in the amount of Thirteen Thousand Thirty Five Dollars and Ten Cents ($13,035.10); and for such other and further relief as may be just and proper.

**Count IX – Unjust Enrichment**
**(Defendant John Doe 4)**

87.    The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

88.    John Doe 4 was the initial transferee of the precious metals that were in Ms. Vernon's ROTH IRA prior to the Ms. Vernon ROTH Transfer.

89.    The transfer of the precious metals that were in Ms. Vernon's ROTH IRA prior to the Ms. Vernon ROTH Transfer, to John Doe 4, served to confer a benefit upon John Doe 4.

90.    John Doe 4, having received the subject precious metals, is cognizant of this benefit having been conferred.

91.    John Doe 4 has retained this benefit, either through continued holding of the precious metals or through the sale – or other alienation – of the precious metals in an exchange that yielded a pecuniary benefit for John Doe 4.

92.    It would be inequitable for John Doe 4 to retain this benefit, John Doe 4 having

16

never offered consideration for the subject precious metals.

WHEREFORE, Ms. Vernon respectfully prays this Honorable Court enter judgment against John Doe 4, and in favor of Ms. Vernon, in the amount of Thirteen Thousand Thirty Five Dollars and Ten Cents ($13,035.10); and for such other and further relief as may be just and proper.

### Count X – Unjust Enrichment
### (Defendant John Doe 5)

93. The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

94. John Doe 5 was the initial transferee of the precious metals that were in Ms. Vernon's IRA prior to the Ms. Vernon IRA Transfer.

95. The transfer of the precious metals that were in Ms. Vernon's IRA prior to the Ms. Vernon IRA Transfer, to John Doe 5, served to confer a benefit upon John Doe 5.

96. John Doe 5, having received the subject precious metals, is cognizant of this benefit having been conferred.

97. John Doe 5 has retained this benefit, either through continued holding of the precious metals or through the sale – or other alienation – of the precious metals in an exchange that yielded a pecuniary benefit for John Doe 5.

98. It would be inequitable for John Doe 5 to retain this benefit, John Doe 5 having never offered consideration for the subject precious metals.

WHEREFORE, Ms. Vernon respectfully prays this Honorable Court enter judgment against John Doe 5, and in favor of Ms. Vernon, in the amount of Thirty Four Thousand Seven Hundred Thirteen Dollars and Sixty Cents ($34,713.60); and for such other and further relief as may be just and proper.

**Count XI – Unjust Enrichment**
**(Defendant John Doe 6)**

99. The Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

100. John Doe 6 was the initial transferee of the precious metals that were in Mr. Vernon's IRA prior to the Mr. Vernon IRA Transfer.

101. The transfer of the precious metals that were in Mr. Vernon's IRA prior to the Mr. Vernon IRA Transfer, to John Doe 6, served to confer a benefit upon John Doe 6.

102. John Doe 6, having received the subject precious metals, is cognizant of this benefit having been conferred.

103. John Doe 6 has retained this benefit, either through continued holding of the precious metals or through the sale – or other alienation – of the precious metals in an exchange that yielded a pecuniary benefit for John Doe 6.

104. It would be inequitable for John Doe 6 to retain this benefit, John Doe 6 having never offered consideration for the subject precious metals.

WHEREFORE, Mr. Vernon respectfully prays this Honorable Court enter judgment against John Doe 6, and in favor of Mr. Vernon, in the amount of One Hundred Four Thousand One Hundred Forty Dollars and Eighty Cents ($104,140.80); and for such other and further relief as may be just and proper.

**[JURY DEMAND AND SIGNATURE BLOCK ON FOLLOWING PAGE]**

## JURY DEMAND

Pursuant to, and in conformity with, Federal Rule of Civil Procedure 38, Ronald E. Vernon and Cheryl A. Vernon demand a trial by jury on all issues so triable.

                      OFFIT KURMAN, P.A.

By:   /s/ Maurice B. VerStandig
       Maurice B. VerStandig, Esquire
       Florida Bar No: 0076723
       Offit Kurman, P.A.
       4800 Montgomery Lane, 9th Floor
       Bethesda, Maryland 20814-3465
       Telephone:  240-507-1714
       Facsimile:   240-507-1735
       mverstandig@offitkurman.com
       *Counsel for Ronald E. Vernon*
       *and Cheryl A. Vernon*