UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62378-CIV-COHN/SELTZER

RONALD E. VERNON and CHERYL A.
VERNON,

      Plaintiffs,

v.

MICHAEL A. STABACH, EQUITY TRUST
COMPANY, STERLING ASSET
MANAGEMENT CO. d/b/a STERLING TRUST
COMPANY, and JOHN DOES 1–6,

      Defendants.

_____/

## ORDER GRANTING EQUITY TRUST'S MOTION
## TO DISMISS FOR FORUM NON CONVENIENS

**THIS CAUSE** is before the Court upon Defendant Equity Trust Company's

Motion to Dismiss for *Forum Non Conveniens* [DE 11] ("Motion"). The Court has

reviewed the Motion, Plaintiffs' Response [DE 17], Equity Trust Company's Reply

[DE 20], and the supplemental briefs of the parties [DE 26 & 27], and is otherwise

advised in the premises. For the reasons discussed herein, the Court will grant the

Motion and will dismiss Plaintiffs' Complaint as to Defendant Equity Trust Company.

## I.   BACKGROUND

This action arises from the loss of Plaintiffs' retirement savings. Plaintiffs Ronald

E. Vernon ("Ronald") and Cheryl A. Vernon ("Cheryl") are clients of Defendant Equity

Trust Company ("Equity Trust"), a retirement-account custodian. The Vernons seek to

recover assets they invested with Equity Trust, and which they allege have

disappeared.

The Vernons' relationship with Equity Trust has its roots in investments they made with Equity Trust's predecessor, Sterling Trust Company ("Sterling").[1] In July 2007, Ronald transferred assets in his traditional individual retirement account ("IRA") to Sterling. DE 1 ¶ 11. At the time of this investment, Ronald designated Defendant Michael A. Stabach as his representative, granting Stabach authority to manage his IRA. Id. ¶ 12. In January 2008, Cheryl also transferred her traditional IRA to Sterling and designated Stabach as her representative. Id. ¶ 18; DE 11-4. The customer agreements used by the Vernons to open their IRAs with Sterling ("Sterling IRA Agreements") provided that Texas law would govern the agreements. DE 26-1 ¶ 3; DE 26-2 at 16. The Sterling IRA Agreements also provided Sterling with the authority to amend the agreements upon notice. DE 26-2 at 16. If a customer maintained his account with Sterling and failed to object within 30 days of receiving notice, the customer was deemed to consent to the amendment. Id.

Equity Trust purchased most of Sterling's assets and business in June 2009, including the Vernons' accounts and the rights to the name "Sterling Trust." DE 11 at 2. Equity Trust revised Sterling's customer agreements to include a new standard IRA Custodial Account Agreement ("Amended Account Agreement"). Id. at 3. The Amended Account Agreement contained the following forum-selection and choice-of-law clauses:

> This Agreement is subject to all applicable federal laws and regulations and shall be governed by and construed under the applicable laws of the S[t]ate of Ohio. . . .

---

[1] Equity Trust asserts that Sterling bears no relationship to Defendant Sterling Asset Management Company, and suggests that the Vernons may have named Sterling Asset Management Company as a defendant in error. DE 11 at 2 n.4.

> Any suit filed against [Equity Trust] arising out of or in connection with this Agreement shall only be instituted in the county courts of Lorain County, Ohio . . . .

Id. at 4; DE 11-8 at 4.

With the next account statements Equity Trust sent to the Vernons, for the period ending June 30, 2009, it notified them of its changes to their customer agreements. DE 11 at 3; DE 11-5; DE 11-6. Equity Trust mailed a separate announcement to the Vernons around the same time, informing the Vernons that it had acquired Sterling's business and had amended the customer agreements. DE 11-1 ¶ 9; DE 11-7. In the announcement, Equity Trust requested that the Vernons sign and return an acceptance of the revised agreements by August 31, 2009. DE 11-7 at 4. The announcement also informed the Vernons that if they did not respond by August 31, they would be deemed to consent to the revised agreements, including the Amended Account Agreement. Id. It appears that the Vernons never returned a signed acceptance, see DE 17 at 5, however they continued to use and manage their accounts. DE 11 at 3; see also DE 1 ¶¶ 11, 18–28.

In April 2011, Cheryl opened a Roth IRA with Equity Trust, again designating Stabach as her representative. DE 11 at 4; DE 11-9. In applying for the Roth IRA, Cheryl acknowledged that she had read and received the applicable account agreement. DE 11 at 4; DE 11-9 at 5. Cheryl's Roth IRA account agreement incorporated forum-selection and choice-of-law clauses substantially identical to those of the Amended Account Agreement. DE 11-8 at 9; DE 11-9 at 5.

As of June 30, 2012, Equity Trust reported that the combined value of the Vernons' accounts was $151,889.50. DE 1 ¶¶ 19–21. Stabach subsequently executed a series of transactions purporting to transfer the Vernons' assets to an account held by

Equity Trust at the "Delaware Depository." Id. ¶¶ 23–27. As a result of Stabach's activity, Equity Trust now reports a balance of zero dollars on the Vernons' accounts. Id. ¶¶ 30–32. In March 2013, Ronald contacted Stabach regarding the missing assets, and Stabach responded via e-mail that he would look into the problem. Id. ¶¶ 33–34. This e-mail was the last communication the Vernons received from Stabach. Id. ¶ 35.

On October 30, 2013, the Vernons filed their Complaint with the United States District Court for the Southern District of Florida, seeking to recover the value of their investments as of June 30, 2013. As to Equity Trust, the Vernons have asserted claims of federal securities fraud (id. ¶¶ 36–40), negligence (id. ¶¶ 46–50), breach of fiduciary duty (id. ¶¶ 56–61), and negligent misrepresentation (id. ¶¶ 62–74). Equity Trust has responded to the Complaint by moving to dismiss for *forum non conveniens*, arguing that the Vernons' customer agreements required them to bring their claims in Ohio's state courts. See generally DE 11.

## II.   DISCUSSION

Equity Trust's Motion raises a dispute over the appropriate forum for this action. Equity Trust argues that the Ohio forum-selection clause in its agreements with the Vernons compels the Vernons to bring their claims against it in Ohio's state courts. The Vernons counter that: (1) Equity Trust cannot enforce the Ohio forum-selection clause by way of a motion to dismiss; (2) they never agreed to the forum-selection clause, thus the clause does not bind them; (3) their claims in this action fall outside the scope of the forum-selection clause; and (4) enforcement of the forum-selection clause would be unreasonable. The Court finds each of the Vernons' arguments without merit, and will dismiss their claims as to Equity Trust for *forum non conveniens*.

**A. A Motion to Dismiss Is the Appropriate Method of Enforcing**
   <u>**a Forum-Selection Clause Designating a Non-Federal Forum**</u>

As a threshold matter, the Vernons argue that a motion to dismiss for *forum non*

*conveniens* is the wrong way to go about enforcing a forum-selection clause. They rely

upon the United States Supreme Court's recent decision in <u>Atlantic Marine Construction</u>

<u>Co. v. U.S. District Court for the Western District of Texas</u>, 134 S. Ct. 568 (2013), for the

proposition that "cases controlled by forum selection clauses must be transferred, not

dismissed." DE 17 at 2. <u>Atlantic Marine</u>, however, presents a more nuanced rule. In that

decision, the Supreme Court held that a federal district court, when faced with a forum-

selection clause designating another federal district court as the forum of choice, should

transfer the case, not dismiss it. <u>Atl. Marine Constr. Co.</u>, 134 S. Ct. at 579–80. The

Supreme Court also held that the appropriate way to enforce a forum-selection clause

designating a state or foreign forum is to seek dismissal for *forum non conveniens*. <u>Id.</u>

at 580, 583 n.8. Because the Ohio forum-selection clause in this case designates a

state forum, and not a federal one, a motion to dismiss for *forum non conveniens* is the

appropriate enforcement mechanism. <u>See, e.g.</u>, <u>id.</u>; <u>Hedge Fund Solutions, LLC v. New</u>

<u>Frontier Media, Inc.</u>, No. 12-5481, 2014 U.S. Dist. LEXIS 25787 at *6–14 (E.D. Pa.

Feb. 28, 2014) (dismissing case for *forum non conveniens* where forum-selection

clause designated state-court forum).

**B. <u>The Ohio Forum-Selection Clause Binds the Vernons</u>**

The Vernons next argue that the Ohio forum-selection clause does not bind them

because they did not sign an agreement containing the clause in relation to their

traditional IRAs. DE 17 at 4–5. Instead, Equity Trust incorporated the Ohio forum-

selection clause into the Vernons' customer agreements in 2009, by notifying them of

the amendment and allowing a period of time to object. Per the terms of the agreements the Vernons *did* sign, however, Equity Trust was entitled to amend their agreements upon notice and an opportunity to object. Because Equity Trust followed these procedures, its amendment of the agreements relating to the Vernons' traditional IRAs was effective. Moreover, Cheryl signed an agreement incorporating the Ohio forum-selection clause when she opened her Roth IRA in 2011. Accordingly, the Ohio forum-selection clause binds the Vernons with respect to the agreements concerning each of their accounts with Equity Trust.

To open their traditional IRA accounts, the Vernons signed the Sterling IRA Agreements. The Sterling IRA Agreements allowed Sterling to amend the agreements according to the procedures set forth in section 15.1 of Sterling's Self-Directed Traditional IRA Kit. DE 11-3 at 5; DE 11-4 at 5. Section 15.1 of the IRA Kit in turn provided that Sterling could unilaterally amend the agreements upon notice to its customers. DE 26-2 at 16. A customer would be deemed to consent to the amendment by maintaining his account with Sterling, unless he objected within 30 days of receiving the notice of amendment. Id.

After Equity Trust purchased Sterling's business in June 2009, it notified the Vernons of amendments to their customer agreements. DE 11 at 3. Equity Trust informed the Vernons they would be bound by the terms of the Amended Account Agreement—which included the Ohio forum-selection clause—unless they objected by August 31, 2009. Id. The Vernons did not object to Equity Trust's amendments, however, and continued to use and manage their accounts. Therefore, according to the terms of the Sterling IRA Agreements they signed, and section 15.1 of the IRA Kit that

their agreements incorporated by reference, the Vernons were deemed to consent to Equity Trust's amendments.

The Vernons argue that Equity Trust's amendment of their agreements was nevertheless ineffective because their silence, as a matter of law, could not demonstrate the assent necessary to enter into or amend a binding contract. DE 17 at 5. The Sterling IRA Agreements the Vernons signed, however, were governed by Texas law. DE 11-3 at 1; DE 11-4 at 1; DE 26-2 at 16. Under Texas law, courts routinely enforce clauses allowing one party to amend an agreement upon notice and the continuation of the parties' relationship without objection. See, e.g., Wakefield v. Wells Fargo Bank, N.A., No. 14-12-00686-CV, 2013 Tex. App. LEXIS 14018 at *13–14 (Tex. Ct. App. Nov. 14, 2013); Fat Butter, Ltd. v. BBVA USA Bancshares, Inc., No. 09-3053, 2010 U.S. Dist. LEXIS 144558 at *44–46, *49 (S.D. Tex. Apr. 13, 2010). The procedures set forth in section 15.1 of the IRA Kit, which allowed amendment upon notice and a customer's maintenance of his account without objection, therefore were capable of producing a valid amendment under the applicable law. Equity Trust's amendment of its agreements in accordance with those procedures was thus effective to bind the Vernons, even without an affirmative expression of assent.

In sum, Equity Trust incorporated the Ohio forum-selection clause into its customer agreements relating to the Vernons' traditional IRAs by the procedures the parties had established through their prior contracts. The Ohio forum-selection clause therefore binds the Vernons with regard to those agreements. Moreover, when Cheryl opened her Roth IRA, she signed an agreement incorporating the Ohio forum-selection

clause (DE 17 at 5), and her contention that she never consented to the clause in relation to the Roth IRA is baseless.

**C. The Vernons' Claims Against Equity Trust Are Within the Scope of the Ohio Forum-Selection Clause**

The Vernons also argue that the Ohio forum-selection clause does not apply to their claims in this action because their claims sound in tort. DE 27 at 2–6. The forum-selection clause in the Vernons' customer agreements applies to claims "arising out of or in connection with" the agreements. DE 11-8 at 4, 9. The Vernons contend that, under Delaware law, such clauses should only apply to contract claims. DE 27 at 4. The Court disagrees with the Vernons that Delaware law governs the construction of the forum-selection clause in their customer agreements. Regardless of which law applies, however, the Vernons' claims arise from their relationship with Equity Trust established by their customer agreements, and from each party's rights and responsibilities as delineated by those agreements. The Vernons' claims thus "arise out of" their customer agreements, and fall within the scope of the agreements' forum-selection clause.

The Vernons argue that, under Delaware law, their claims do not fall within the scope of the forum-selection clause in their customer agreements. Within the Eleventh Circuit, however, federal common law governs the construction of a forum-selection clause. Cornett v. Carrithers, 465 F. App'x 841, 842 (11th Cir. 2012) (per curiam); PNC Bank, N.A. v. Frog Adventures, Inc., No. 13-941, 2013 U.S. Dis. LEXIS 108862 at *2 (M.D. Fla. Aug. 2, 2013). But see Rucker v. Oasis Legal Fin., L.L.C., 632 F.3d 1231, 1236 (11th Cir. 2011) (applying Erie doctrine to determine whether state or federal law governed forum-selection clause, and applying both as harmonious); Martinez v. Bloomberg LP, 740 F.3d 211, 220–24 (2d Cir. 2014) (applying contractually designated

law to construe forum-selection clause).[2] A federal court should construe forum-selection clauses broadly, <u>Food Mktg. Consultants v. Sesame Workshop</u>, No. 09-61776, 2010 U.S. Dist. LEXIS 38679 at *33 (S.D. Fla. Mar. 26, 2010), and should interpret the clauses "by reference to ordinary contract principles." <u>Cornett</u>, 465 F. App'x at 842 (internal quotation marks omitted). In cases such as this, where the contracts at issue contain a broad forum-selection clause applying to "[a]ny suit . . . arising out of or in connection with" an agreement (<u>see</u> DE 11-8 at 4, 9), federal courts have had no trouble finding statutory and tort claims "arising directly or indirectly from the relationship evidenced by the contract," <u>Slater v. Energy Servs. Grp. Int'l Inc.</u>, 634 F.3d 1326, 1331 (11th Cir. 2011) (internal quotation marks omitted), <u>abrogated on other grounds by</u> <u>Atl. Marine Constr. Co.</u>, 134 S. Ct. 568, to fall within the scope of the clause. <u>See, e.g.</u>, <u>Roby v. Corp. of Lloyd's</u>, 996 F.2d 1353, 1361 (2d Cir. 1993) (holding securities fraud claims within scope of forum-selection and arbitration clauses in agreements establishing relationships between parties); <u>Oak Sys., Inc. v. Francotyp-Postalia, Inc.</u>, No. 01-2794, 2002 U.S. Dist. LEXIS 2213 at *4–9 (E.D. Pa. Feb. 5, 2002) (finding civil conspiracy claim within scope of forum-selection clause in agreement establishing relationship between parties).

The Vernons' claims against Equity Trust arise from the relationships between the parties created by their customer agreements. The Vernons invested their IRAs with Sterling, a custodian of such retirement accounts. DE 1 ¶¶ 11–13, 18–21. This investor-custodian relationship was memorialized in their customer agreements with Sterling,

---

[2] Moreover, were state law to govern the construction of the forum-selection clause in the Vernons' customer agreements, Ohio law would be the most likely candidate, because each of the customer agreements provides that it is to be "governed by and construed under the applicable laws of . . . Ohio." DE 11-8 at 4, 9.

which Equity Trust eventually amended to include the Ohio forum-selection clause. DE 11 at 3–4. The customer agreements set forth the extent of Equity Trust's fiduciary duties, duties of care, and duties of disclosure and reporting as custodian of the Vernons' IRAs. DE 11-8 at 2–3, 6–8. In the Complaint, it is precisely these duties that the Vernons allege Equity Trust has breached. DE 1 ¶¶ 36–40, 46–50, 56–74. The Vernons characterize their causes of action as sounding in statute or tort, however the wrongs underlying each of the Vernons' claims would not exist but for the relationship established by the customer agreements. Indeed, interpretation of the customer agreements likely will be necessary to determine the extent of the duties to the Vernons that Equity Trust allegedly breached. Because the Vernons' claims against Equity Trust are integrally related to Equity Trust's duties under the customer agreements, and would not exist absent the relationship established by the customer agreements, the Vernons' claims "arise out of" the agreements. See Slater, 634 F.3d at 1330–31 (holding that statutory claims resulting from relationship created by contract arose from contract). Accordingly, the Court finds that the Vernons' claims come within the scope of the Ohio forum-selection clause in their customer agreements, which applies to any action "arising out of or in connection with" the agreements.

Though the Court determines that Delaware law does not govern the construction of the customer agreements' forum-selection clause, applying Delaware law would not lead to a different outcome. Like the federal common law, Delaware law provides that tort claims growing out of a contractual relationship may come within the scope of a forum-selection clause in the contract establishing the relationship. Ashall Homes Ltd. v. ROK Entm't Grp., Inc., 992 A.2d 1239, 1252–53 (Del. Ch. 2010).

Because the Vernons' claims against Equity Trust arise from Equity Trust's business relationship with the Vernons memorialized in their customer agreements, and from Equity Trust's alleged failures and misconduct in performing the duties envisioned in those agreements, the Vernons' claims would fall within the scope of the customer agreements' Ohio forum-selection clause even under Delaware law. See id. (finding securities claims to fall within scope of forum-selection clause applying to claims "arising []under" shareholder agreements).

###### D. **The Ohio Forum-Selection Clause Is Enforceable**

Finally, the Vernons argue that the Ohio forum-selection clause is unenforceable because it is unreasonable. A party seeking to avoid the consequences of a forum-selection clause, however, bears a heavy burden of establishing the unreasonableness of the clause. The Vernons argue that the Court should not enforce the forum-selection clause because Ohio's courts could not hear their federal securities claims, and because Stabach may not be subject to the personal jurisdiction of Ohio's courts. Because the Vernons would not be without remedies in Ohio's state-court system, and may not leverage their concerns about jurisdiction over Stabach to invalidate portions of their contracts with Equity Trust, the Court finds that the Vernons have failed to satisfy their burden of showing that the Ohio forum-selection clause is so unreasonable as to be unenforceable.

Where a contract contains a valid forum-selection clause, the clause "should be given controlling weight in all but the most exceptional cases." Atl. Marine Constr. Co., 134 S. Ct. at 581 (internal quotation marks omitted). Therefore, a plaintiff resisting a forum-selection clause bears the burden of establishing that the clause is unreasonable. Fred Lurie Assocs. v. Global Alliance Logistics, Inc., 453 F. Supp. 2d 1351, 1354 (S.D.

Fla. 2006). This burden requires the plaintiff to make a "'strong showing' that '(1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy.'" Kostelac v. Allianz Global Corporate & Specialty AG, 517 F. App'x 670, 675 (11th Cir. 2013) (per curiam) (quoting Lipcon v. Underwriters at Lloyd's, 148 F.3d 1285, 1292 (11th Cir. 1998)).

The Vernons first argue that the clauses would deprive them of a remedy because Ohio's courts cannot exercise jurisdiction over their federal securities-fraud claims. DE 17 at 3. The Vernons correctly note that the federal courts have exclusive jurisdiction over their claims for violations of 17 C.F.R. § 240.10b-5. See Garcia v. Santa Maria Resort, Inc., 528 F. Supp. 2d 1283, 1285 (S.D. Fla. 2007). Many courts, however, have enforced forum-selection clauses even where it deprived the plaintiff of the ability to bring federal securities claims. See, e.g., Lipcon, 148 F.3d at 1297–99 (enforcing clause designating English forum, though enforcement deprived plaintiffs of federal securities claims). Courts are particularly likely to enforce such clauses where the laws of the designated forum provide alternative remedies. In context of securities claims, the availability of state-law securities claims, in addition to common-law alternatives such as fraud and negligence, assuages concerns that a plaintiff will be deprived of his day in court by the designation of a state-court forum. Spenta Enters., Ltd. v. Coleman, 574 F. Supp. 2d 851, 857 (N.D. Ill. 2008). Here, it would appear that Ohio state law provides adequate remedies in the form of statutory securities and common-law causes of action.

12

See Johnson v. Church of the Open Door, 902 N.E.2d 1002, 1006–10 (Ohio Ct. App. 2008) (discussing various securities-related causes of action). The Vernons have not explained why the causes of action available under Ohio law and in Ohio's courts are inadequate, thus the Court determines that the Vernons have not established that the enforcement of the Ohio forum-selection clause would deprive them of a remedy.

The Vernons also argue that their action "cannot" be tried in Ohio because Stabach, a Florida resident, would not be subject to the personal jurisdiction of Ohio's courts. DE 17 at 4. The Vernons do not offer any evidence that Stabach is outside the reach of Ohio's courts. Instead, they state only that "[t]here are no facts alleged in the Complaint that lend so much as the inference that Mr. Stabach would be subject to the jurisdiction of the county courts of Lorain County, Ohio." DE 17 at 4. In other words, the Vernons argue that, because they have not alleged that Ohio's courts have jurisdiction over Stabach, Ohio's courts lack jurisdiction over Stabach. This *ipse dixit* lacks any persuasive force.

Further, even could Stabach escape suit in Ohio, it would not provide a basis to avoid the forum-selection clause. The inconvenience to the Vernons of pursuing their claims against Defendants in multiple fora is insufficient to overcome the presumption that the forum-selection clause is reasonable. See Fred Lurie Assocs., 453 F. Supp. 2d at 1355–57 (finding inconvenience of litigating claims in multiple fora insufficient to overcome presumption in favor of forum-selection clause). Moreover, the Vernons themselves are responsible for this inconvenience; they did business with Sterling and Equity Trust through a Floridian investment manager of their own choosing. See DE 1 ¶¶ 12–18. They cannot now foist the negative consequences of their arrangements

13

upon Equity Trust by leveraging their relationship with Stabach to invalidate portions of their customer agreements. Indeed, allowing a plaintiff to escape the consequences of a forum-selection clause simply by naming additional defendants runs contrary to the goal of enforcing the parties' intent at the time of contracting. See Friedman v. World Transp., Inc., 636 F. Supp. 685, 691 (N.D. Ill. 1986). In short, the Vernons have failed to carry their burden of establishing that the Ohio forum-selection clause is so inconvenient to be unreasonable.

## III.  CONCLUSION

The Vernons' customer agreements relating to their accounts with Equity Trust contain a forum-selection clause designating the county courts of Lorain County, Ohio, as the exclusive forum for disputes arising out of the agreements. The forum-selection clause is binding upon the Vernons and enforceable, and the Vernons' claims in this action fall within the scope of the clause. Accordingly, Equity Trust is entitled to enforce the forum-selection clause against the Vernons by way of motion to dismiss for *forum non conveniens*. It is thereupon

**ORDERED AND ADJUDGED** as follows:

1.  Defendant Equity Trust Company's Motion to Dismiss for *Forum Non Conveniens* [DE 11] is **GRANTED**.

2.  This action is **DISMISSED** solely as to Defendant Equity Trust Company, without prejudice to Plaintiffs re-filing an action in the appropriate forum.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 7th day of May, 2014.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF